Filed 9/22/22  County of L.A. v. Villanueva CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| COUNTY OF LOS ANGELES, | B310871 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCP00630) |
| v. | |
| ALEX VILLANUEVA, | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff.  Affirmed.

Law Offices of Gregory W. Smith and Gregory W. Smith for Defendant and Appellant Caren Carl Mandoyan.

Law Office of Stanley L. Friedman and Stanley L. Friedman; Benedon & Serlin, Gerald M. Serlin and Douglas G. Benedon for Defendants and Appellants Alex Villanueva, Los Angeles County Sheriff, and Los Angeles County Sheriff's Department.

Miller Barondess, Louis R. Miller and Mira Hashmall for Plaintiff and Respondent County of Los Angeles.

# INTRODUCTION

This appeal by defendants Los Angeles County Sheriff's Department (Department), Alex Villanueva (Villanueva), the current Sheriff of Los Angeles County, and Caren Carl Mandoyan (Mandoyan), a former Los Angeles County Sheriff's Deputy, arises out of an action brought by plaintiff County of Los Angeles (County) to declare void a purported settlement agreement entered by defendants in Mandoyan's separate wrongful termination lawsuit and writ proceeding against the County.

In brief, under the administration of former Los Angeles County Sheriff Jim McDonnell, Mandoyan was terminated for cause as a deputy sheriff. After the Los Angeles County Civil Service Commission (Commission) upheld his termination, Mandoyan filed a petition for writ of mandate to set aside the Commission's decision, as well as a complaint for damages against the County challenging his termination. When Villanueva was elected Sheriff, he directed the Department to enter into a settlement agreement with Mandoyan overturning the Commission's decision and reinstating Mandoyan to his prior position, with back pay of more than $200,000. In return, Mandoyan agreed to dismiss his civil actions against the County. Neither County Counsel nor the Los Angeles County Board of Supervisors (Board) approved the settlement.

The County initiated the present action against the Department, Villanueva, and Mandoyan (collectively, defendants), challenging the validity of the settlement agreement. During the trial court proceedings, the Department attempted to rehire Mandoyan by having his name placed on the "eligible list"[1] for new hires, a move the County opposed. In addition, an

---

[1] "Eligible list" means the list of names of persons who have passed the civil service examination. (Los Angeles County Civil Service Rules, Rule

2

amendment to the settlement agreement was executed and presented to the court wherein Mandoyan waived any back pay he may have been entitled to under the agreement. However, he reserved his right to seek such compensation through future litigation. Because the parties incorporated these post-filing facts and applicable legal theories exceeding the scope of the County's writ petition and complaint in their briefing, the parties requested, and the trial court agreed, to address the authority of the Department to rehire Mandoyan and the validity of the amended settlement agreement.

Ultimately, the trial court found the settlement agreement and the amended agreement void. The court also found that the County's removal of Mandoyan's name from the eligible list for new hires was a proper exercise of power. On appeal, defendants do not assert the original settlement agreement was valid. Rather, they contend the amended agreement was valid, as it cured any prior defect. Further, defendants contend that even without the settlement agreement, Mandoyan was eligible for rehire as a deputy sheriff. We disagree with these contentions and affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

The County employed Mandoyan as a deputy sheriff in the Department's South Los Angeles Station. In September 2016, Mandoyan was terminated for cause. Mandoyan appealed his termination to the Commission, which issued a final commission action on May 23, 2018,

---

2.23.) All further undesignated rules are to the Los Angeles County Civil Service Rules.

3

upholding his termination. At the time, Jim McDonnell was the Sheriff of Los Angeles County.

On August 13, 2018, Mandoyan filed a verified writ petition challenging the final commission action, naming the Commission as the respondent, and the County and Department as real parties in interest. (*Mandoyan v. Los Angeles County Civil Service Commission,* L.A. Super. Ct. case No. BS174714.) On August 27, 2018, Mandoyan filed a complaint for damages against the County alleging various claims arising from his hearing before the Commission. (*Mandoyan v. County of Los Angeles,* L.A. Super. Ct. case No. BC719337.)

On November 26, 2018, Villanueva was elected Sheriff of Los Angeles County, and on December 3, 2018, he assumed office. At Villanueva's direction, on December 28, 2018, the Department entered into a settlement agreement with Mandoyan. The agreement purported to rescind the final commission action, reinstate Mandoyan as a deputy sheriff, and award him over $200,000 in back pay, in exchange for Mandoyan dismissing the pending civil actions against the County (case Nos. BS174714 and BC719337). The settlement agreement was signed by Mandoyan and by Chief Eliezer Vera on behalf of the Department. The agreement was not approved by County Counsel or the Board.[2]

On February 5, 2019, County Counsel learned of the settlement agreement after the Department requested back pay for Mandoyan pursuant to the agreement. On February 28, 2019, the County wrote directly to

---

[2]     Paragraph 10 of the settlement agreement was revised on January 7, 2019, but backdated to December 28, 2018, to replace Mandoyan's job title classification from "Bonus 1 Deputy" to "Deputy Sheriff Generalist." This revision does not affect our analysis of the issues presented on appeal.

4

Mandoyan explaining that the settlement agreement was void, that his reinstatement was unlawful, and that the final commission action remained in full force and effect.

On March 6, 2019, the County filed an ex parte application for a temporary restraining order (TRO) and order to show cause why a preliminary injunction should not issue. The County requested that the Department and Mandoyan cease characterizing Mandoyan as a deputy sheriff or County employee, and that Mandoyan immediately relinquish possession of all County property. Although the trial court denied the TRO, it subsequently granted the motion for a preliminary injunction on August 19, 2019. The preliminary injunction directed that, pending trial or further order of the court, Mandoyan cease holding himself out as a County employee and relinquish all County property in his possession. It also directed Sheriff Villanueva and the Department to cease to recognize or hold Mandoyan out as a deputy sheriff or a County employee.[3]

On March 15, 2019, the County filed a petition for writ of mandate and complaint for declaratory and injunctive relief against defendants. The County requested that the trial court issue a writ of mandate requiring that: (1) Mandoyan cease to hold himself out as a deputy sheriff; (2) Mandoyan relinquish all County property in his possession; and (3) Sheriff Villanueva and the Department cease to recognize or hold Mandoyan out as a deputy

_____

[3] Sheriff Villaneuva and the Department and Mandoyan appealed the trial court's preliminary injunction order, but subsequently abandoned or dismissed their appeals. (*County of Los Angeles v. Alex Villanueva et al.*, case No. B300300.)

On June 22, 2020, Mandoyan filed a motion to dissolve/modify the preliminary injunction. The trial court subsequently took the hearing off calendar after it issued its merits ruling on the writ petition and complaint.

sheriff or a County employee. The County also sought a final adjudication that: (1) the settlement agreement was null and void; (2) the process used to reinstate Mandoyan was not a valid method to reinstate discharged County employees; and (3) the reinstatement of Mandoyan was unlawful and of no effect. On March 9, 2020, the County filed its opening merits brief in connection with the writ proceeding.

In the meantime, Mandoyan had applied for the position of deputy sheriff trainee with the Department on March 7, 2020. On March 12, 2020, Mandoyan passed the civil service examination for the position. The following day, the Department put Mandoyan on an eligible list for new hires. The County's Department of Human Resources director of personnel, Lisa Garrett, learned of these actions. On March 27, 2020, she informed Sheriff Villanueva and the Department that Mandoyan was not eligible for County employment and directed them to remove Mandoyan's name from the eligible list.

On July 1, 2020, the Department and Mandoyan executed an amendment to the settlement agreement. The amendment stated that the settlement agreement "remains in full force and effect." However, Mandoyan "waive[d] any back pay he may have been entitled to under the Settlement Agreement." He reserved his "right to obtain back pay or any other compensation through any additional legal processes that he may be entitled to pursue in the future." The amended settlement agreement was submitted to the trial court with defendants' merits opposition briefing on August 6, 2020.

The trial court held hearings on August 28, 2020 and September 1, 2020. The parties requested, and the court agreed, to consider all issues raised, including those based on facts occurring after the filing of the writ

6

petition and complaint, specifically the placement of Mandoyan on the eligible list for rehire and the amendment to the settlement agreement.

On September 28, 2020, the court issued an order granting the petition for writ of mandate and declaratory relief. Specifically, the court ordered that Mandoyan must "(1) cease holding himself out as a Deputy Sheriff or County employee unless and until . . . Mandoyan is properly rehired by the County or by further order of the Court; and (2) relinquish all County property in his possession, including any Department-issued uniform, badge and weapon unless and until . . . Mandoyan is properly rehired by the County or by further order of the Court. [Defendants must] cease to recognize or hold . . . Mandoyan out as a Deputy Sheriff or County employee unless and until . . . Mandoyan is properly rehired by the County or by further order of the Court."

The trial court then issued a declaration that "(1) the Settlement Agreement dated December 28, 2018 is null and void; (2) the amendment to the Settlement Agreement executed on July 1, 2020 is null and void; (3) the process used to reemploy Mandoyan was not valid; (4) Mandoyan did not become a County employee through that process; and (5) in civil actions, only the Los Angeles County Counsel and Board of Supervisors have the authority to enter into settlement agreements on behalf of the County, Sheriff and/or the Department."

On January 21, 2021, the court entered judgment.

## DISCUSSION

I.  *The Settlement Agreement and the Purported Amendment*

With good reason, defendants do not challenge the trial court's ruling that the settlement agreement as initially executed was void. "A county may

7

exercise its powers only through the [Board] or through agents and officers acting under authority of the [B]oard or authority conferred by law." (Gov. Code, § 23005.)  The Board provides oversight authority over all county officers.  (Gov. Code, § 25303.)  In addition, the Board shall "direct and control the conduct of litigation in which the county, or any public entity of which the board is the governing body, is a party."  (Gov. Code, § 25203.)  Furthermore, County Counsel is vested with "exclusive charge and control of all civil actions and proceedings in which the County or any officer thereof, is concerned or is a party."  (L.A. County Charter, art. VI, § 21.)  Similarly, any settlement agreement involving the county or one of its officers must involve the County Counsel.  (L.A. County Code, § 2.14.020.)[4]  However, where a

_____

[4]      Los Angeles County Code section 2.14.020 states:  "A.  Except as otherwise provided in this section, where, in the opinion of the county counsel, the board of supervisors may legally compromise or settle any claim or suit by or against the county, or any officer thereof, the county counsel shall report to the board of supervisors the results of his investigation concerning such suit or claim, together with such recommendation for its disposition as he may have, for the information of the board of supervisors in its action.  [¶]  B.  Where, after proper claim has been filed and upon investigation by the county counsel, he finds that there exists a probable liability on the part of the county of Los Angeles as to a claim or suit, and where the amount necessary to be expended in order to pay, settle or compromise such claim or suit does not exceed the sum of $20,000.00, the county counsel is authorized to pay, settle or compromise such claim or suit pending against the county of Los Angeles, or any officer or employee thereof for which the county may ultimately be liable, in an amount not exceeding $20,000.00, as to any person, firm or corporation, without the necessity of first receiving the approval of the board of supervisors.  [¶]  C.  The county counsel is further authorized to settle or compromise any claim or suit of the county of Los Angeles against third parties, where he finds there exists a reasonable doubt or dispute as to the validity of said claim or suit, and where the amount claimed or prayed for does not exceed the sum of $20,000.00, without the necessity of first receiving the approval of the board of supervisors.  The county counsel is authorized to execute and deliver to said

8

settlement would require the expenditure of $20,000 or more, the Board must also approve the settlement. (L.A. County Code, § 2.14.020.)

When read together, the statutory authority as well as the related local charter and code demonstrate that in the context of civil litigation, only County Counsel and (for settlements of more than $20,000) the Board have the authority to enter into settlement agreements on behalf of the County, including on behalf of the Sheriff and Department. (See *G. L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1093–1094 ["because the statues in question specifically set forth the ways in which the City may enter into contracts, any other methods of contract formation—even though not explicitly prohibited by the statutes—are invalid"].) In this case, neither County Counsel nor the Board (as required for expenditures of more than $20,000) approved the agreement. Therefore, the original settlement agreement was void as beyond the power of the purportedly contracting parties to enter. (Gov. Code, § 23006; see *Seymour v. State of California* (1984) 156 Cal.App.3d 200, 203 ["[i]t is settled that the mode of contracting vested in a state agency is the measure of its power to contract and a contract made in disregard of the established mode is invalid"].)

The purported amended settlement agreement fairs no better. Defendants contend that the amended settlement agreement is valid. They rely on the principle that "no public policy forbids parties from abandoning a void, illegal contract, and entering a new, enforceable contract covering the same subject matter." (*Corrie v. Soloway* (2013) 216 Cal.App.4th 436, 447.)

---

third parties any and all releases, covenants not to sue, satisfactions of judgment, and any other instrument in writing necessary or advisable to be executed and delivered to said third parties in connection with the settlement of such claims or suits."

However, that principle does not apply here.  The amended settlement agreement did not "abandon" the void agreement.  It expressly stated that the original agreement "remains in full force and effect."  However, Mandoyan "waive[d] any back pay he may have been entitled to under the Settlement Agreement."  He also reserved his "right to obtain back pay or any other compensation through any additional legal processes that he may be entitled to pursue in the future."

Moreover, regardless of whether Mandoyan's "waiver" of his right to any back pay cured the failure to have the approval of the Board,[5] it did not cure the flaw of not having the approval of County Counsel.  Without the approval of County Counsel, the agreement as purportedly amended remains void.

Defendants argue that County Counsel was obligated to follow Villanueva's decision to enter into a settlement agreement, based on an attorney-client relationship that existed between the parties.  However, this contention is barred by collateral estoppel.

Issue preclusion (collateral estoppel) applies when the following requirements are met.  "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally,

---

[5]     We note that County Counsel is not prohibited from presenting any settlement to the Board for approval.  Los Angeles County Code section 2.14.020.B allows County Counsel to settle certain cases "without the necessity of first receiving" the Board's approval.  This section suggests that County Counsel could elect to present such a settlement to the Board.

the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

All of these requirements are present in this case. The precise issue whether there was an attorney-client relationship between County Counsel on one hand, and the Sheriff and Department on the other, was previously raised, litigated, and decided. In the midst of the preliminary injunction proceedings, on August 7, 2019, Villanueva and the Department filed a motion to disqualify the County's attorneys, including County Counsel. They argued then, as they do now, that County Counsel had formed an attorney-client relationship with Villanueva and the Department. The trial court denied the motion, explicitly finding that no attorney-client relationship existed between the parties. The trial court referred to this ruling and repeated its reasoning (virtually verbatim) when addressing this attorney-client relationship argument in its ruling on the writ petition and complaint.[6]

Furthermore, the disqualification order was a final order for purposes of issue preclusion. "An order granting or denying a disqualification motion is an appealable order. (*Meehan* [*v. Hopps* (1955)] 45 Cal.2d [213,] 215; see *Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 452–453; *Ponce–Bran v. Trustees of Cal. State University* (1996) 48 Cal.App.4th 1656, 1661, fn. 3.)" (*Machado v. Superior Court* (2007) 148 Cal.App.4th 875, 882.) And "where an order is appealable, it is not also reviewable on appeal from the final judgment." (*Machado v. Superior Court, supra,* at p. 884; see Code Civ. Proc., § 906; *In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119; *Berge v.*

---

[6] In its briefing, the County also highlights that defendants "repackage their disqualification arguments" in order to validate the amended settlement agreement.

11

*International Harvester Co.* (1983) 142 Cal.App.3d 152, 158, fn. 1; 9 Witkin, Cal. Procedure (6th ed. 2021) Appeal, § 100, p. 165 ["An appealable order from which no appeal was taken cannot be reviewed on an appeal from the final judgment"].)  Here, defendants appealed only from the final judgment. They did not appeal from the order denying their motion for disqualification of County Counsel.  Therefore, that order, along with its determination that County Counsel had no attorney client relationship with the Department and Villanueva, is final for purposes of issue preclusion.  (See *Machado v. Superior Court, supra,* 148 Cal.App.4th at p. 886, citing *Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 997–998; see also *In re Matthew C.* (1993) 6 Cal.4th 386, 393, superseded by statute on another point, as stated in *People v. Mena* (2012) 54 Cal.4th 146, 156 ["If an order is appealable . . . and no timely appeal is taken therefrom, the issues determined by the order are res judicata"].)

Lastly, the disqualification order involved three of the parties to the current proceeding: the County, Villanueva, and the Department.  As for Mandoyan, he was indisputably in privity with Villanueva and the Department in this litigation.  (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 826; *Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 672–673.)  Therefore, the disqualification order is binding on all defendants and the merits of that ruling by the trial court (i.e., there is no attorney-client relationship) may not be relitigated in this case.

We conclude that the amended settlement agreement is void based on defendants' failure to seek settlement approval from County Counsel.  (See Gov. Code, §§ 23005, 25303, 25203; L.A. County Charter, art. VI, § 21; L.A. County Code, § 2.14.020.)

12

II.  *Authority to Rehire Mandoyan*

Defendants contend the trial court erred in finding that Garrett, the County director of personnel, was authorized to direct Mandoyan's removal from the eligible list, thereby precluding the Department from rehiring him. We disagree.

The parties do not dispute that the Los Angeles County Sheriff's hiring power is subject to the Civil Service Rules.  (See *Cronin v. Civil Service Commission of Los Angeles County* (1925) 71 Cal.App. 633, 636 [in absence of contravening civil service rules, a county sheriff has the right to appoint any employees]; see rule 1.02 [County has the exclusive right to "hire or rehire" and "to determine the methods, means and personnel by which the county's operations are to be conducted"].)  Therefore, it is imperative to look at these rules to determine the validity of Mandoyan's removal from the eligible list for new hires.

The director of personnel or a designate shall promulgate eligible lists. (Rule 10.01; see rule 2.23 ["'[e]ligible list' means the list of names of persons who have passed the civil service examination"].)  In filling vacancies, the appointing authority (here, the Sheriff) must make an appointment from an eligible list certified by the director of personnel.  (Rule 11.01.)  An eligible list is certified when the director of personnel communicates to the appointing authority (the Sheriff) "the name or names of persons eligible for appointment to a position."  (Rule. 2.08.)

In addition, the director of personnel "may remove the name of an eligible from the eligible list" of an individual "[w]ho has been dismissed . . . from any position . . . for any cause which would be a cause for dismissal from county service; or whose record of employment has not been satisfactory in the country service."  (Rule 6.04(F); see also rule 10.10 ["The name of any

13

person may be withheld from certification or removed from the eligible list for any of the reasons in Rule 6.04 hereof"]; rule 11.04 ["The name of an eligible may be withheld from certification for any of the reasons enumerated in Rule 6.04"].)

"Except where the authority is restricted to the director of personnel by the Charter, the director of personnel may delegate his [or her] authority in operational activities, such as, but not limited to classification, recruitment and selection and employee development, to the other department or district heads." (Rule 3.03.) This delegation of authority must be in writing. (*Ibid.*)

Defendants argue that the County's Department of human resources director of personnel, Garrett, delegated her authority over the eligible list for new hires to the Department. Defendants cite to the deposition of a Rodney Collins, who testified for the County as the Person Most Knowledgeable of Department of Human Resources matters, in which he testified that the director of personnel delegated "the ability to create" the eligible list on some prior date, but that delegation was "[w]ith oversight by the [County's] Department of Human Resources."[7] On its face, this vague testimony is insufficient to demonstrate a delegation of sole authority to the Department to create the eligible list. Assuming any delegation as described occurred, the County's Department of Human Resources maintained "oversight" over the process. Indeed, Garrett's conduct suggested that there had been no delegation: in March 2020, she informed Sheriff Villanueva and the Department that Mandoyan was not eligible for County employment and directed them to remove Mandoyan's name from the eligible list. Moreover,

---

[7]     It is unclear from the record the parameters of this alleged delegation of authority.

the Civil Service Rules require that any delegation of authority by the director of personnel must be in writing. (Rule 3.03.) There is no evidence in the record that Garrett delegated in writing her authority over the eligible list for new hires.[8]

Thus, the record demonstrates that Garrett as the director of personnel had the authority to promulgate the eligible lists, and her certification of the lists was required for the Sheriff to make an appointment from the lists. (Rules 2.08, 11.01.) Therefore, the placement of Mandoyan's name on an eligible list was unauthorized, and Garrett as director of personnel was empowered to remove his name from the eligible list pursuant to rules 6.04, 10.10 and 11.04.

**DISPOSITION**

The judgment is affirmed. The County of Los Angeles is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.          COLLINS, J.

---

[8] It appears the trial court was perplexed at defendants' failure to provide documentation of this delegation of authority, especially because this document "presumably would have been in the Sheriff's possession." Although defendants indicated at oral argument that "they wished to submit the written delegation to the Sheriff into evidence," no such document was ever filed in the trial court.

15